UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

   – against –

MICHAEL MORYAN,

                     Defendant.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CR-74 (MKB)

MARGO K. BRODIE, United States District Judge:

      On October 29, 2020, Defendant Michael Moryan pleaded guilty to receipt of child pornography in violation of 18 U.S.C. § 2552(a)(2). (Tr. of Plea Hearing Before the Hon. Sanket J. Bulsara 27:20–30:9, annexed to Letter Requesting that the Court Accept the Defendant's Guilty Plea as Attachment 1, Docket Entry No. 22-1; Indictment ¶ 1, Docket Entry No. 10.) The Court accepted Moryan's guilty plea on December 2, 2020. (Order Accepting Guilty Plea, Docket Entry No. 23.) On August 19, 2021, the Court sentenced Moryan to sixty months of imprisonment and five years of supervised release, imposed a $100 special assessment and $5,000 Justice for Trafficking Victims Act ("JTVA") assessment, and ordered $54,000 in restitution "due immediately" and "payable at a rate of $25 per quarter while in custody, and at a rate of 10 [percent] of gross monthly income while on supervised release." (Judgment 1–3, 6, 8, Docket Entry No. 38.)

      On July 19, 2024, the Government filed a motion for turnover of Moryan's inmate trust account to partially satisfy his restitution obligation pursuant to 18 U.S.C. § 3664(n). (Gov't's Mot. for Victim Rights ("Gov't's Mot."), Docket Entry No. 45.) Moryan did not respond. For the reasons explained below, the Court grants the Government's motion.

## I. Background

Moryan is incarcerated at Federal Correctional Institution ("FCI") Elkton and due to be released on March 3, 2026. (Gov't's Mot. 2.) On July 15, 2024, the Bureau of Prisons ("BOP") informed the Government that Moryan had $2,709.85 in his inmate trust account from Western Union deposits. (*Id.*) As of July 19, 2024, Moryan had paid the $100 special assessment and $125 towards restitution, and owes a balance of $58,875 representing a restitution balance of $53,875, and the JVTA special assessment in the amount of $5,000.[1] (*Id.* at 1–2.) On July 18, 2024, the Government requested that the BOP restrain $2,609.85 from Moryan's trust account, and the BOP subsequently restrained the funds. (*Id.* at 2.)

## II. The Court grants the Government's motion

The Government argues that Moryan's inmate trust account funds should be turned over pursuant to 18 U.S.C. § 3664(n) because "the amount of money in [Moryan's] trust account represents a 'substantial resource,'" (*id.* at 4 (quoting 18 U.S.C. § 3664(n))), and it is unlikely that he will "find other ways of earning income" before his release from custody, (*id.*). The Government contends that "it is immaterial whether [Moryan] has defaulted on his debt or is current on his court-ordered payment plan," (*id.* at 5), because "Congress intended [section] 3664(n) to operate as an *independent collection mechanism* against an incarcerated defendant, without reference to the defendant's compliance with or default on his court-ordered payment schedule."[2] (*Id.* (quoting *United States v. Kelly*, 627 F. Supp. 3d 148, 152 n.4 (E.D.N.Y. 2022)).)

---

[1] The Government also included a fine of $104.82 without explanation. (Gov't's Mot. 2.) Since the Court did not impose a fine, (*see* Judgment 6–8), the Court does not consider this request.

[2] The Government also argues that 18 U.S.C. § 3613(a) authorizes turnover of Moryan's inmate trust account funds. (Gov't's Mot. at 4–5.) Because the Court finds that turnover is appropriate under section 3664(n), it declines to decide the Government's motion pursuant to section 3613(c).

2

The "primary and overarching goal of the [Mandatory Victims Restitution Act of 1996 ("MVRA")] is to make victims of crime whole: to compensate these victims for their losses and to restore the[m] to their original state of well-being." *United States v. Yalincak*, 30 F.4th 115, 121 (2d Cir. 2022) (second alteration in original) (quoting *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015)). "[T]he MVRA provides that any restitution orders imposed under the Act must 'be issued and enforced in accordance with section 3664,'" *Thompson*, 792 F.3d at 277–78 (quoting 18 U.S.C. § 3663A(d)), which requires district courts to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant," *Yalincak*, 30 F.4th at 121 (quoting 18 U.S.C. § 3664(f)(1)(A)). A restitution order issued under the MVRA "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986" that "arises on the entry of judgment." 18 U.S.C. § 3613(c); *United States v. Burko*, No. 10-CR-291, 2023 WL 3195943, at *2 (S.D.N.Y. May 2, 2023) (explaining that the MVRA "makes 'an order of restitution . . . a lien in favor of the [government] on all property and rights to property of the person [subject to the order]'" (second alteration in original) (quoting § 3613(c))).

Section 3664(n) provides that "[i]f a person obligated to provide restitution . . . receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution . . . still owed." 18 U.S.C. § 3664(n); *United States v. Kinlock*, 174 F.3d 297, 301 n.3 (2d Cir. 1999) (quoting same). To determine whether funds constitute a "substantial resource" under section 3664(n), courts first consider whether the source of the funds are within the reach of the statute and then determine whether the amount is sufficiently

3

"substantial" to warrant turnover. *See, e.g.*, *United States v. Bagola*, 90 F.4th 1218, 1220, 1221 (8th Cir. 2024) (explaining that "the district court first determines the source or composition of trust account funds" (citing *United States v. Woodring*, 35 F.4th 633, 635 (8th Cir. 2022))); *United States v. Carson*, 55 F.4th 1053, 1057 (6th Cir. 2022) (holding district court erred in not making findings as to the sources of the funds it ordered to be turned over from the defendant's account); *but see United States v. Alexander*, No. 16-CR-73, 2020 WL 1698660, at *1 (D. Conn. Apr. 8, 2020) (authorizing turnover of inmate account funds without discussing source).

Funds deposited into an inmate's account from sources external to the prison may be seized under 3664(n), including lumpsum payments, such as government stimulus checks, and periodic deposits from friends, family, and other third parties. *See, e.g.*, *United States v. Price*, No. 17-CR-301, 2023 WL 4599841, at *4 (E.D.N.Y. July 18, 2023) (authorizing turnover of funds largely comprising periodic deposits made by family members); *United States v. Schwartz*, No. 20-CR-6033, 2022 WL 537621, at *2 (W.D.N.Y. Feb. 23, 2022) (authorizing turnover of government stimulus payments to inmate's account). However, courts have found that prison employment wages are excluded from the statute's reach. *See United States v. Lazala*, No. 97-CR-1293-6, 2024 U.S. Dist. LEXIS 35855, at *5 (finding turnover proper where "just 1 [percent] of the funds in [the defendant's] account [were] attributable to his wages" and "the overwhelming majority [was] attributable to outside sources"); *Price*, 2023 WL 4599841, at *4 (ordering turnover after government provided supplemental information that defendant's trust account did not contain "the fruits of paid wages but was composed largely of periodic deposits made by family members"); *United States v. Sabato*, No. 02-CR-236, 2021 WL 826751, at *3 (D. Conn. Mar. 4, 2021) (finding turnover appropriate where the vast majority came from a third-party and only some of the funds derived from wages); *see also Carson*, 55 F.4th at 1057 & n.2 (expressly agreeing with the "Fifth, Eighth, and Ninth Circuits" that "section 3664(n) covers

4

payments from outside sources, not gradually accumulated prison wages").

If the funds in the inmate's trust account derive solely or mostly from external sources, courts then will determine whether the total amount of funds in the inmate trust account is "sufficiently substantial," *Carson*, 55 F.4th at 1057 (citation omitted), but there is no universal approach for making this determination.  Some courts compare the total amount of the funds sought for turnover to the defendant's financial circumstances as measured by monthly restitution payments, current income, or account spending.  *See, e.g.*, *Bagola*, 90 F.4th at 1221 (noting that $900 stimulus check deposited into inmate's trust account "may be considered substantial" relative to the inmate's restitution payments of roughly $21 per month as calculated from the inmate having paid "just over $1,800 in approximately seven years"); *Carson*, 55 F.4th at 1058 (observing that "a few thousand dollars" deposited into inmate's account could be "sufficiently substantial" where the inmate earns "no more than a hundred dollars a month in wages"); *Sabato*, 2021 WL 826751, at *3 (finding that "influx" of over $4,000 was a "windfall" because it was "well more than [the defendant had] used in the last six months").  Some courts compare the amount of funds requested for turnover against the amounts that other courts have ordered to be turned over for restitution payments.  *See, e.g.*, *Lazala*, 2024 U.S. Dist. LEXIS 35855, at *3 (ordering turnover of funds after finding that courts have held funds to be "substantial resources . . . even when the amount in question has been significantly less" than the amount in [the defendant's] inmate trust account"); *United States v. Othman*, 683 F. Supp. 3d 207, 210–11 (E.D.N.Y. 2023) (same); *Price*, 2023 WL 4599841, at *2 (same).

A restitution order "due immediately" makes "the lien created by the restitution order enforceable in full at any time, notwithstanding compliance with the payment schedule," *Price*, 2023 WL 4599841, at *4 (quoting *Schwartz*, 2022 WL 537621, at *2 n.2), and invoking section 3664(n) "does not alter — and is separate from — the restitution payment schedule in the

5

judgment, which remains in effect notwithstanding the turnover of funds," *Othman*, 683 F. Supp. 3d at 211. *See Schwartz*, 2022 WL 537621, at *2 n.2 (explaining that the ordered payment plan for restitution was a "floor, not a ceiling, on [d]efendant's restitution obligations" because plea agreement specified that "any schedule of payments imposed by the [c]ourt . . . is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment" and the court ordered restitution payments "to begin immediately" (citations omitted)). The plain language of section 3664(n) does not set forth an express or implied precondition of default but instead requires that a defendant apply "substantial resources . . .to any restitution . . . still owed." 18 U.S.C. § 3664(n); *Poltenson v. United States*, No. 23-CV-479, 2023 WL 7130241, at *1, 4 (D. Conn. Oct. 29, 2023); *see United States v. Kendrick*, No. 10-CR-6096, 2022 WL 1819390, at *4 (W.D.N.Y. June 3, 2022) ("[T]he plain language of Section 3664(n) persuades the [c]ourt that no statutory precondition of default exists.").

Moryan's trust account funds should be turned over under section 3664(n) because the funds are from third parties and the total amount of $2,609.85 is sufficiently substantial. The Court ordered Moryan's restitution due immediately, (Judgment 8), rendering the judgment enforceable at any time notwithstanding the payment terms, and Moryan still owes approximately $53,875 in restitution. The funds that the BOP restrained are comprised of Western Union deposits, (Gov't's Mot. 2), which indicates that they are from sources outside of FCI Elkton and therefore not prison employment wages. The Court finds that the funds constitute a windfall for Moryan as he has gained thousands of dollars while failing to pay restitution for almost the entire time he has been incarcerated. Although not dispositive, the Court notes that district courts in the Second Circuit have considered amounts less than the amount requested in this case to be substantial resources for purposes of turnover under 3664(n).

6

*See Poltenson*, 2023 WL 7130241, at *1, 3–4, 6 (finding the BOP's encumbrance of $914.69 stimulus check was valid under section 3664(n)); *Schwartz*, 2022 WL 537621, at *2–3 (ordering turnover of $1,361.50); *see also Bagola*, 90 F.4th at 1220 (affirming a district court's order to turnover $924.60 from a defendant's trust account).

Accordingly, the Court finds that turnover of the funds from Moryan's inmate trust account is proper under section 3664(n).

### III. Conclusion

For the foregoing reasons, the Court grants the Government's motion. The Court orders the BOP to turn over the $2,609.85 it restrained from Moryan's inmate trust account to the Clerk of Court for the Eastern District of New York within ten days of the date of this Memorandum and Order for the Clerk of Court to apply towards Moryan's outstanding restitution obligation in this matter.

Dated: February 19, 2025
       Brooklyn, New York

SO ORDERED:

      /s/MKB
MARGO K. BRODIE
United States District Judge